IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE | CASE #20-00633 EAG |
| EFRAIN CARRERO VELEZ | CHAPTER 7 |
| SSN #6265 | *Trustee Reply to Debtor's Objection doc #187* |
| Debtor | |

### DEBTOR's OPPOSITION TO TRUSTEE'S PROPOSED DISTRIBUTION of 33% to SECURED CREDITORS FROM SURPLUS FUNDS THAT SHOULD REVERT TO DEBTOR UNDER §726(a)(6)

TO THE HONORABLE COURT:

COMES NOW debtor through his legal representation who respectfully prays and objects *Trustee's Final Report* as follows:

This Honorable Court has ordered the debtor to state his position as to the Trustee's *Reply to Debtor's Objection to Chapter 7 Trustee's Final Report* at doc #187 due on or before January 21, 2022, as allowed at doc #192, and request for extension filed on January 21, 2022 at doc #195.

Debtor opposes the distribution proposed by Trustee and has standing to so oppose. Debtor's "stake" in the **$65,104** Trustee proposes to pay the 3 secured creditors from the funds on hand after satisfaction of 100% of the unsecured creditors of this Estate is what precisely gives this debtor standing to challenge Trustee's distribution to the 3 secured creditors.

In what follows, are debtor's arguments to persuade this Honorable Court to disallow Trustee's distribution of the proposed 33% to the 3 secured creditors in the amount estimated by debtor of **$65,104**. Debtor does not oppose payment of 100% to the unsecured creditors of this Estate. The proposed distribution to the 3 secured creditors, have already been satisfied and "paid" through the abandonment of their respective collateral from which each of the 3 can collect their claims. To pay these 3 creditors what is proposed by the Trustee in the amount of **$65,104** is to pay these creditors more than their [abandoned] claims and more than what was bargained for between each creditor and the debtor when each transaction was borne.

The balance of funds on hand after 100% payment to the unsecured pool of claims, is precisely what creates an estate of surplus funds in this case and under the strict mandate of §726(a)(6), which requires that Trustee be ordered to revert these funds to debtor.

### Procedural & Factual Posture

1. This case was filed as a chapter 13 proceeding on **February 11, 2020** and later converted to chapter 7 on **February 10, 2021** as per docs #1 and #82.

2. On **March 11, 2021** the chapter 7 debtor filed a *Notice of Intention* at doc **#99** wherein he surrendered all interest in two real properties and in the motor vehicle to the respective secured creditors all who hold a valid security on the properties.

3. On **March 17, 2021** at doc #102 BPPR sought and obtained relief from the §362 automatic stay on the Puerto Real, Cabo Rojo property.

4. On **July 8, 2021** at doc #160 Trustee abandoned debtor's non-exempt real and personal property in that of the two real properties and the 2014 Nissan Altima S motor vehicle.

5. On **July 14, 2021** Pentagon Federal Credit Union [PenFed] sought and obtained relief from the §362 automatic stay on its collateral in that of 2014 Nissan Altima. Refer to docs #145 and #163.

6. The Discharge of Debtor was entered on **August 18, 2021** at doc #169.

7. Roberto Román Valentin was appointed as the Chapter 7 Trustee and has filed *Chapter 7 Trustee's Final Report, Application for Compensation of Professional* and *Notice of Trustee's Final Report & Proposed Distribution,* both on **December 3, 2021**, distribution to which debtor objects. Refer to docs #184 and #185.

8. The two real properties abandoned by Trustee and surrendered by debtor are located and referred to as the Puerto Real, Cabo Rojo property and the Llanos Tuna, Cabo Rojo property, both of which have a validly constituted lien recorded in the Property Registry. Refer to Schedule A/B and Schedule D at doc #1 and to claims #1 and #3.

9. The Puerto Real, Cabo Rojo property is secured in the amount of **$94,818.10** and valued by BPPR as per Claim #1 at **$130,000.**[1]; this same property has a second lien held by Puerto Rico Department of Treasury which is also secured with the Llanos Tuna, Cabo Rojo property valued by the debtor at **$20,000** with a claim filed by Treasury Department at Claim #3 secured by both properties in the amount of **$96,174.**

10. The 2014 Nissan Altima scheduled and listed by debtor secures PenFed as per Claim #2 in the amount of **$4,919.90** and the collateral is valued by the claimant creditor at **$8,675.**

11. BPPR's secured claim #1 shows an equity margin of approximately **+$45,982.** Refer to Claim #1 and *§362 Motion for Relief* at doc #91 and Order at doc #102.

12. Penn Fed's secured claim #2 shows an equity margin of approximately **+$3,755.** Refer to Claim #2 and §362 *Motion for Relief* at doc #145 and Order at doc #163.

13. Department of the Treasury of Puerto Rico filed claim #3[2] in the amount of **$95,805.18** showing that its tax lien extends to the 2 Cabo Rojo real properties. Refer to Claim #3 and Schedule D at doc #1.

14. Pursuant to the Court's Claims docket, there is a total of **$165,543.18** in secured claims, **$8,414.95** in priority claims, and **$64,229.23** in unsecured claims, or a total of **$72,644** owed to these classes of unsecured claims.

15. Trustee has been successful in quickly capturing the liquid garnished funds of the debtor in the state court case at doc #95 in the amount of **$157,327.**

16. On information and belief BPPR has initiated its collection in a foreclosure of mortgage action before the Mayaguez Superior Court in case number MZ 2021 cv 01386.  Debtor has been served with the Complaint.

---

[1] Debtor valued the same property at $140,000 at Schedules A/B doc #1.

[2] Claimant does not value its collateral(s) as required on the claim form. .

17. Trustee's *Final Report & Proposed Distribution* filed at doc #185, proposes to satisfy 100% of the unsecured and administrative claims to which debtor has **no** opposition; and, in addition, Trustee proposes distribution of 33% of each secured claim, which the debtor opposes vehemently. Trustee's distribution proposal is summarized herein as follows:

   a. Payment of 100% to the unsecured creditors of the Estate which total approximately **$72,644**;
   b. Payment of 100% of Trustee's commission and 100% to the Trustee's attorney fees at a total of **$11,116.35**; for a gran net total to this level of **$83,760**, in addition,
   c. Payment of 33% of the claims of the 3 secured claim holders in a total amount of **$65,103.54**: BPPR at **$31,568.44**, Penn Fed at **$1,638.02**, and the Commonwealth of Puerto Rico Treasury Department at **$31,897.08**.

### Issues Presented

A. Is this a surplus funds Estate?

B. Does this debtor have standing to challenge and object Trustee's proposed payment to the secured creditors?

C. Is Trustee abusing his authority by deviating from the priority scheme mandated at §726(a)(6) in order to pay each secured creditor 33% of its claim?

D. Is Trustee bound or estopped, from paying an additional 33% to the identical secured creditors whose collateral Trustee abandoned?

E. Does this Court have jurisdiction over the abandoned property in this case where the automatic stay has been sought, unopposed and obtained by 2 of the 3 secured creditors, where the interest in the collateral was surrendered and relinquished by the debtor, discharge entered, in addition to the un-opposed abandonment of the collateral by the Trustee?

## Introduction

What follows is the debtor's position and challenge to Trustee's proposal to distribute and pay the 3 secured creditors 33% of their claims. Debtor does not oppose payment in full at 100% to the unsecured claim holders [which include priority and administrative], but does challenge the approximate **$65,104** Trustee proposes to pay to the 3 secured creditors in contravention of §726(a)(6) and in contradiction to Trustee's abandonment of each of these creditor's collateral at doc #160.

Trustee has no authority to distribute 33% of the secured creditor's claim to each of the 3 creditors, yet proposes doing so after payment of 100% to the unsecured pool of creditors. If Trustee adheres to the strict order of distribution under §726(a) and up to the fifth level of distribution, the Estate has surplus funds.

Trustee has no discretion to deviate from the priority scheme prescribed by §726(a)(6) and must rather revert any remaining funds to the debtor pursuant to §726(a)(6). These funds do not belong to the secured creditors who have been satisfied with their respective collateral both under the security agreements and by Trustee's abandonment.

Should the debtor prevail and the Court determine that the 3 secured creditors will not be further compensated in view of Trustee's abandonment of each creditor's collateral at doc #160 and in compliance with the distribution scheme mandated under §726(a)(6), this estate becomes an estate of surplus funds with the surplus to revert to the debtor under the distribution scheme mandated under §726(a)(6).

Section 726(a) provides in pertinent part that "[E]xcept as provided in section 510 of this title, property of the estate shall be distributed - . . . (6) sixth, to the debtor." 11 U.S.C. §726(a).

Furthermore, Trustee is judicially estopped to act in contradiction of his abandonment of the collateral that secures the same 3 secured creditors at doc #160 that he now purports to pay in detriment to the debtor. The collateral of each of these secured creditors no longer remains within the estate. Trustee abandoned the same collateral that secures these claims 6 months ago and debtor relinquished and surrendered his interest in the collateral 10 months ago, thereby removing these from the estate via the abandonment and the corresponding §362 motions for relief and more recently by the Discharge.

We have found no authority in either the Bankruptcy Code nor in the **Handbook for Chapter 7 Trustees** to justify Trustee's purported distribution of what should be distributed as surplus and excess funds to the debtor in 6th rank in the strict order of distribution under §726(a).

At this point in time none of the secured creditors: BPPR, PenFed or Treasury have any impediment to proceed to satisfy their respective claims through foreclosure, repossession or through tax auction. These creditors do not require any assistance from our esteemed Trustee to compensate them over and above their collateral to which each has at its disposal. They only need to act to collect.

Bankruptcy laws are designed to "give []. . . the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co., vs Hunt*, 292 U.S. 234, 244 (1934). The filing of a bankruptcy petition creates a bankruptcy estate that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §§301, 541(a).

A Chapter 7 bankruptcy estate becomes the owner of all of the debtor's nonexempt assets on the date the petition is filed. See 11 U.S.C. §§ 704(1), 726. The Estate then liquidates those assets and distributes the proceeds to the creditors, and the debtor receives a discharge. *Id.* An estate may opt to "abandon" a scheduled asset, effectively returning the claim to the debtor, as was done in the instant case by the Trustee's abandonment of three properties. 11 U.S.C. §554. Refer to doc #160.

The instant case is among the very small percentage of chapter 7 cases that have assets for distribution, and interestingly enough, is also one of the even smaller percentages, or exceptional cases under chapter 7 that have surplus funds available after payment of 100% to the unsecured pool of creditors. It is the debtor's contention and argument that in our case, the funds that Trustee proposes distribution to the 3 secured creditors, are surplus. It is after properly distributing to the 5 classes or priorities plainly enumerated in §726(a) that these funds should revert to the debtor as required specifically under (a)(6) of §726.

Refer to an excellent law review article penned by a protegee and law clerk to the late Honorable Judge Juan R. Torruella, Dalié Jiménez which in 2009 surveyed and found that only a 7% of chapter 7 cases have unencumbered non-exempt assets that could be distributed to unsecured creditors ("no asset case"). *The Distribution of Assets in Consumer Chapter 7 Bankruptcy Cases*: **American Bankruptcy Law Journal,** Vol 83 December 17,

2009.  Only a mere 7% of debtors had assets for distribution ("asset case"), or 93% result in being 'no asset' cases. These percentages have most probably not varied since Ms. Jimenez' survey.

Evidently desirous of adding to the slim margin of cases that distribute 100% to the unsecured creditors from assets of the debtor, Trustee purports to go over and above his 'call to duty' and requirements of both §726(a) and the **Handbook**, to also pay and distribute an additional 33% to the three secured creditors at the expense of this debtor and with the purpose and intent of converting a surplus estate into a no surplus estate.

A creditor has no right to satisfaction of more than 100% of what is owed to it and what was bargained for in the financial transaction between the creditor and the debtor.

Not only do the unsecured creditors in this particular case stand to be paid 100% of their claims, they will be paid relatively early in the case,[3] thanks to the diligence and professionalism always exhibited by this Chapter 7 Trustee in his cases. We commend Trustee's efficiency, yet, we most respectfully disagree with his pretensions to 'overpay' the 3 secured creditors, and overpay at this debtor's expense and detriment.

Notwithstanding this Trustee's efficiency and exceptional promptness in the administration of his cases generally, in this case he is wrong in his quest and is simply over reaching by pretending to payout to the three (3) secured creditors a 33% of each of the creditor's claim after 100% payment to the unsecured claim holders.

## DISCUSSION of ISSUE I

### Is this Estate a surplus funds estate?

The subject of an estate of surplus funds is intimately intertwined today to the standing argument.  The determination of whether there exists a surplus funds estate is fundamental to giving this debtor standing to challenge the proposed distribution to the creditors in the case.

Debtor understands that but for Trustee's proposal to distribute and consume all the available funds in the amount of **$149,769.48** by also distributing to the 3 secured creditors, this Estate is among the very exceptional estates that does have, and will have, surplus funds after 100% payment to the unsecured claim holders.  If the debtor prevails, this estate will change to an estate of surplus funds, and require compliance with the

---

[3] The case was converted to chapter 7 on February 10, 2021 and the Trustee has filed his Final Report on December 3, 2021 at doc # 185.

order and rank of distribution mandated under §726(a). It is precisely the balance of funds available after payment to the unsecured creditors of this Estate, that make-or-break debtor's right to challenge Trustee's distribution proposal and allows funds to revert to the debtor. Absent any balance of funds available after the 100% payout to the unsecured pool of creditors, it is true debtor would lack standing to object as argued by Trustee at doc #187, but in our case today, there is a balance of funds that remain from the available funds of **$149,769.49**, after payment of the unsecured pool of creditors, in the amount of **$65,104**.

The approximate **$65,104** Trustee proposes to deviate and distribute to the 3 secured creditors opposed by debtor, is what will effectively convert this estate into an estate of surplus funds, admittedly a "rare exception . . . [of] a surplus estate where the Chapter 7 debtor is entitled to a distribution under §726(a)(6) of the Bankruptcy Code." *Kahn vs Regions Bank ((n re Kahn),* 544 Fed. Appx. 617, 619 (6th Cir. Nov. 1, 2013) cited by the Trustee at doc #187 as support against debtor's *Opposition* at doc #186.

The outcome of whether Trustee is allowed to pay these 3 creditors most certainly impacts if this is a surplus of funds estate or not a surplus estate. Additionally, the outcome certainly gives debtor a "sufficient stake" and a "pecuniary interest" in these proceedings and therefore, gives this debtor, win or loose, the standing necessary to challenge the proposed distribution of 33% to each of the 3 secured creditors herein.

The "real possibility . . . [of a] surplus" test that courts have used to determine standing in the claim settlement and in the litigation settlement context is also applicable to opposition to distribution context in debtor's opinion, because these are closely analogous and involve a traditional standing analysis, such as to be "directly and adversely affected pecuniarily" by such order. See *In re Fondiller,* 707 F.2d 441, 442 (9th Cir. 1983) (referring to such test as the "person aggrieved" test, wherein a debtor only has standing to appeal if the bankruptcy court's order would "diminish the debtor's property, increase his burdens, or detrimentally affect his rights").

Typically, a debtor has no standing to object to claims or orders relating to them because the debtor does not have a pecuniary interest in the distribution of the assets of the estate. *In re Kieffer-Mickes, Inc.,* 226 B.R. 204, 208 (B.A.P. 8th Cir. 1998); *In re Broady,* 96 B.R. 221, 223 (Bankr. E.D. Mo. 1988). "[A] hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate [as] [s]uch an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *In re Ballou,* 2011 WL 4530314, at *6 (Bankr. M.D. Fla. Sept. 13, 2011 (finding that a chapter

7 debtor lacked standing where there was no evidence that the estate's assets would generate a surplus that would affect the debtor's financial interests and where debtor had not offered an amount greater than the amount received under the settlement).

In not following the prescribed priority scheme mandated under §726(a)(6) by pretending to pay the 3 secured creditors a 33% of each of their claims, above and before the debtor who ranks 6th in the distribution scheme, Trustee purports to convert an estate of surplus funds into the opposite, or a no surplus estate where a chapter 7 debtor would traditionally have no standing, but for defending his right to those approximate **$65,104**.

Courts have recognized two exceptions to this rule: (1) where no trustee has been appointed; or (2) where there will be a surplus after distribution providing the debtor with a pecuniary interest in the estate. *Caserta vs Tobin,* 175 B.R. 773, 775 (S.D. Fla. 1994). Also see *In Martino,* 2017 WL 1519797, at *6 (M.D. Fla. Apr. 27, 2017). "When a debtor dispute claim of creditors [debtor argues that by analogy is applicable to our facts today], standing is proper if the disallowance of the claims would create a surplus of assets to be returned to the debtor." *Kunimoto vs Fidell,* 26 Fed. Appx. 630, 632 (9th Cir. 2001). The Court in *Kunimoto* notes that the statement "if the debtor can show a reasonable possibility of a "surplus" is taken from the case of *In re Cult Awareness Network, Inc.,* 151 F. 3d 605, 608 (7th Cir. 1998). Also see *In re Stanley,* 114 B.R. 777, 778 (Bankr. M.D. Fla. 1990). Whether the test requires a reasonable possibility of a surplus or a certainty of a surplus, it remains the debtor's burden to provide sufficient evidence that disallowance of the contested claim [distribution] will produce a surplus distribution to the debtor. *Cult Awareness Network,* at 608 as cited in *In re Walker,* 356 B.R. 834 (Bankr. S.D. Fla. 2006), *Schiano vs Salkin,* case no. 19-60015 (S.D. Fla. Aug. 23, 2019).

"There is hardly any doubt that upon the showing of surplus funds in the estate after distribution to creditors, a chapter 7 debtor is considered a party in interest" with standing to challenge a trustee's requested fee." *In re Moon,* 258 B.R. 828 (Bankr. N. D. Fla. 2001). Debtor argues that he has the same standing to challenge a proposed distribution, where if he prevails, will make available **$65,104** funds that Trustee purports be paid to the 3 secured creditors.

This Court must decide if the funds Trustee has earmarked for payment to the 3 secured creditors in the amount of **$65,104** can be legally paid or not paid to these 3 creditors, before a determination can be made by this Court that this case is or is not an estate of surplus funds. Debtor argues that precisely by Trustee choosing to pay the 3 secured creditors, Trustee is consuming the balance of funds available and on hand that

§726(a)(6) mandates be reverted to the debtor.  Trustee's deviation of these funds from the strict order of distribution of §726(a), has converted the estate of surplus funds into an estate of no surplus in detriment to the debtor herein and his fundamental right to a fresh start.

## DISCUSSION of ISSUE II

**Does this debtor have standing to challenge and object Trustee's proposed payment to the 3 secured creditors?**

It is precisely the use and distribution of the balance of the remaining funds estimated at **$65,104** after payment of 100% of all unsecured, priority and administrative claims, that will cause the debtor a pecuniary loss should he not prevail in his opposition, that gives the debtor standing to challenge Trustee's proposed distribution.  Debtor is next in line, or next in the order of distribution under §726(a) that mandates that these funds revert to debtor after payment of all unsecured claims of the Estate.

Should Trustee prevail in his proposed distribution to these 3 secured creditors, the debtor, will be charged and penalized by Trustee's act to pay the secured creditors. Debtor opposes payment of approximately **$65,104** to the 3 secured creditors by the Trustee. It is these funds which by right belong to the debtor and should be returned to the debtor after 100% payment the unsecured, priority, and administrative claims that total approximately **$84,666.**

The Trustee argues at his *Reply to Debtor's Objection to Trustee's Final Report* filed at doc #187 that the debtor has no standing.  Trustee is wrong.  The same funds Trustee proposes to unduly pay the 3 secured creditors, belong to debtor, as of right.  As surplus funds and under a strict and plain reading of §726(a), these funds belong to the debtor. Should debtor prevail in his challenge to the Trustee, he will receive the funds left over after the 100% payment to the unsecured pool of creditors of this Estate.  If the debtor does not prevail, he suffers an injury in fact, important to standing, or a lack thereof.

Trustee's unusual and incomprehensible proposed distribution of funds to the secured creditors at 33% of their claims, will certainly cause harm and injury to this debtor who is the natural recipient of the surplus funds in this case under a strict and plain meaning of §726(a)(6).

Harm is even more notably pronounced after the abandonment of the properties that secure these claims by the Trustee, and the debtor's surrender of his interest in the subject properties. Debtor not only loses use and enjoyment of his investment in the properties, that he is willing to forego, but debtor will be forced to also pay the same creditors over and above what they are owed, in addition to the loss of his properties and of his investment and effort in having reduced the respective loans on the same collateral that he surrenders and Trustee abandoned.

It is precisely the funds proposed by the Trustee to pay the 3 secured creditors a 33% payout that gives debtor the standing to challenge the *Proposed Final Report* in this case. There are approximately **$65,104** surplus funds that Trustee is proposing to consume entirely through a partial distribution of 33% to each of these creditor's secured claims.

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth vs Seldin*, 422 U.S. 490 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. vs AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir. 1992), as cited in *In re Newcare Health Corp.* 244 B.R. 167 (B.A.P. 1st Cir. 2000).

Standing is a jurisdictional issue that may be raised at any time. *In re Dein Host, Inc.*, 835 F. 2d 402, 404 (1st Cir. 1987) (noting that the court is "duty bound" to determine appellee standing.) citing *Orr vs Orr*, 440 U.S. 268, 271 (1979); *Great Road Serv. Ctr., Inc. vs Golden (In re Great Road Serv. Ctr., Inc.)* 304 B.R. 547, 550 (1st Cir. B.A.P. 2004) ("[Q]uestions of standing must be considered *sua sponte* as it is akin to subject matter jurisdiction."). *In re Torres Martínez*, 397 B.R. 158 (B.A.P. 1st Cir. 2008).

Admittedly, Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl.1; see also *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). "Spawning from that limitation, the frequently intertwined doctrines of standing, ripeness, and mootness all probe whether a subsisting controversy warrants judicial intervention." *Religious Sisters of Mercy v. Azar*, No. 3:16-cv-00386, 2021 WL 191009, at *11 *5 (D.N.D. Jan. 19, 2021) (citing *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)).

"One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)) (internal quotation marks omitted). See *Great Road Serv. Ctr., Inc. v. Golden (In re Great Road Serv. Ctr., Inc.)*, 304 B.R.

547, 550 (1st Cir. BAP 2004) ("Questions of standing must be considered *sua sponte* as it is akin to subject matter jurisdiction.").

Accordingly, "those who seek to invoke the jurisdiction of the federal courts must satisfy Article III's threshold case or controversy requirement by demonstrating that they have 'a personal stake in the outcome of the claim asserted.'" *United States v. 434 Main St., Tewksbury, Mass.*, 862 F. Supp. 2d 24, 32 (D. Mass. 2012) (quoting *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006)).

To satisfy this requirement, there must be: (1) an **"injury in fact"**; (2) that is "fairly traceable to the challenged action"; and (3) that likely "will be redressed by a favorable decision." *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 222 (1st Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Significantly, "the injury in fact 'must be concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 50 (1st Cir. 2021) (quoting *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017)).

The "person aggrieved" standard requires that that the person aggrieved is one whose pecuniary interest are "directly and adversely" affected by an order of the bankruptcy court. *Id* at 117-18. A 'person aggrieved' if the order diminishes his property, increases his burdens, or impairs his rights." *In re El San Juan Hotel*, 809 F. 2d 151, 154 (1st Cir. 1997). "To be directly affected by the order, the appellant's pecuniary interests . . . cannot be merely contingent or speculative." *Orion Fitness Grp., LLC vs River Valley Fitness One Ltd., P'ship*, 2004 WL 524430, at *1 (D.N. H. Mar 17, 2004) (citing *Davis vs Cox*, 356 F. 3d 76,93 n. 15 (1st Cir. 2004); *Traveler's Ins. Co. vs H.K. Porter Co.*, 45 F. 3d 737, 742-43 (3rd Cir. 1995); *In re El San Juan*, 89 F. 2d at 154-55)); see also *Gentil vs DeGiacomo (In re Gentile)*, 492 B.R. 580, 585 (1st Cir. B.A.P. 2013); *In re Westwood Cmty. Two Ass'n Inc.* 293 F.3d 1332, 1335 (11th Cir. 2002) "A person has a financial stake in the order when that order diminishes their property, increases their burden or impairs their rights." *Id*.

Debtor's 'injury in fact' is concrete: if he does not prevail, he will lose funds that §726(a) directs should be turned over to a debtor after full payment of the unsecured creditors; is particularized: debtor stands to lose more than **$65,104** if Trustee prevails instead; and is actual and imminent: the funds will be distributed and lost to him if his voice is not heard by this Court; and not conjectural or hypothetical for all the same reasons listed herein.

Should the Court allow and approve Trustee's proposed distribution in this case filed at doc #185, the funds at issue will be unduly paid to the 3 secured creditors: BPPR, PenFed and Treasury.

The **$149,769.48** made available to the Trustee, has been as a product of debtor's sacrifice with the sweat of his brow, which has made possible payment of his creditors. in that of to the Estate's creditors, but if Trustee is allowed will be used to doubly tax him for choosing chapter 7. To pay 100% to debtor's creditors Trustee only needs part of the funds, or approximately **$84,665.38**, to pay all the unsecured pool of creditors. In other words, the **$65,104** destined in the *Trustee's Proposed Distribution*, to the 3 secured creditors is what the debtor understands in good faith to be the surplus fund that should revert to him in 6th rank under the §726(a) order of distribution.

The 3 properties that secure these 3 claims [Claims #1, #2 and #3] have been abandoned by the Trustee and withdrawn from property of the estate and surrendered to his creditors in satisfaction of their claims. Trustee's proposed action to further compensate the secured creditors is in fact in detriment to debtor's right to receive the surplus funds instead of paying these to the secured creditors and assist debtor in his rehabilitation and in his fresh start.

### DISCUSSION of ISSUE III

**Is Trustee abusing his authority by deviating from the priority scheme mandated at §726(a)(6) in order to pay each secured creditor 33% of its claim?**

Debtor argues that the Trustee lacks authority to distribute 33% to the 3 secured creditors, most importantly because such a proposal is contrary to the strict order of distribution mandated under §726(a). Under the statutory distribution scheme mandated by §726(a)(6), debtor in this case is entitled to the surplus he estimates at **$65,104,** according him a pecuniary interest in the total amount of claims allowed and paid, and accordingly gives him standing. Our case today is an estate of surplus funds, but for Trustee's attempt to consume the balance of funds with the proposed distribution to the 3 secured creditors in 33% of each claim.

Debtor challenges the proposed payment to the secured creditors of 33% of each secured claim. If allowed by this Court, payment to these creditors will be in debtor's detriment and expense and in contravention of the distribution order mandated under §726(a), which requires excess funds be returned to the debtor and not to the 3 secured creditors already satisfied with their respective collateral.

The Bankruptcy Code's priority scheme, . . . [is] founded on principles of equity. *Brautstein vs McCabe*, 571 F. 3d 108, 118 (1st Cir. 2009) ("the bankruptcy estate is distributed in accordance with the scheme of priorities set out in the Bankruptcy Code, and the nature of bankruptcy is equity.") *In re Sarnovsky*, 436 B.R. 461, 465 (Bankr. N.D. Ohio 2010).  The distribution of estate funds to creditors in accordance with the priorities established by the Bankruptcy Code is a feature, not a bug.  See, *Czyzewski vs Jevic Holding Corp.* 137 S. Ct. 973 (2017).  "The Code makes clear that distributions of asset in a chapter 7 liquidation must follow this prescribed order." *Jevic*, 137 S. Ct. at 979.  "The priority system applicable to those distributions has long been considered fundamental to the Bankruptcy Code's operation." *Jevic* 137 S. Ct. at 984 quoted *In re Zimpher*, 609 B.R. 712 (Bankr. N.D. Ohio 2019).

Trustee's proposal to pay 3 creditors, 33% of each of their secured claim, runs afoul to logic, to the law, and deprives debtor of funds legitimately belonging to him to aid his rehabilitation and do not correspond to the secured creditors, but rather must be returned to the debtor.

Under a strict and plain meaning of §726(a), or under the §726(a) (6) order of distribution, these funds belong to the debtor, as left over or surplus funds.  To allow payment to the secured creditors of the purported 33% of these claims will deprive debtor of his due process and deprive him of the surplus funds due to him in sixth rank under §726(a)(6).

The Handbook for Chapter 7 Trustees at page 4-34 orders that the Final Report "must set forth the distributions to be made under §726." And that "[t]he trustee must be familiar with the distribution priorities set forth in the Code." Trustees do not have discretion to change or over-step the distribution priorities set forth in the Code and required by the Handbook for Chapter 7 Trustees.

## 11 U.S. Code § 726 - Distribution of property of the estate

(a) Except as provided in § 510 of this title, *property of the estate shall be distributed*—
(1) *first*, in payment of claims of the kind specified in, and in the order specified in, § 507 of this title, proof of which is timely filed under § 501 of this title or tardily filed on or before the earlier of—
(A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or
(B) the date on which the trustee commences final distribution under this section;
(2) *second*, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

**(A)** timely filed under § 501(a) of this title;

**(B)** timely filed under § 501(b) or 501(c) of this title; or

**(C)** tardily filed under § 501(a) of this title, if—

**(i)** the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under § 501(a) of this title; and

**(ii)** proof of such claim is filed in time to permit payment of such claim;

**(3)** _third_, in payment of any allowed unsecured claim proof of which is tardily filed under § 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

**(4)** _fourth_, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

**(5)** _fifth_, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

**(6)** _sixth, to the debtor_.

(Emphasis provided).

As such the §726(a)(6) order of distribution and priorities requires that excess funds be turned over to the debtor, not to the secured creditors who have been abandoned by the Trustee, surrendered by the debtor and properties for which 2 of the secured creditors obtained §362 relief from the automatic stay. Furthermore, each of the [2] claimants that obtained §362 relief, and have also indicated in each proof of claim that they are over secured.

The secured creditors are no longer part of this Estate and are protected by their respective collateral. A secured creditor can protect its own interest in the collateral subject to the security interest.

## DISCUSSION of ISSUE IV

**Is Trustee bound and estopped from paying an additional 33% to the identical secured creditors whose collateral Trustee abandoned?**

The debtor further argues that the Trustee may also be bound and subject to estoppel in purporting to pay each secured creditor 33% of its claim after he abandoned the collateral in these proceedings at doc #160. Yet, for reasons unknown, and possibly because his interests have changed, Trustee has assumed a contrary position. Is Trustee not therefore judicially estopped?

The purpose of the doctrine of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. Trustee's position in proposing payment to the secured creditors is inconsistent with his earlier position of abandoning the collateral. Trustee's inconsistency would produce an unfair advantage and imposes an unfair detriment on the debtor if not estopped. *Davis vs Wakelee,* 156 U.S. 680, 689 (1895) as cited in *New Hampshire vs Maine,* 532 U.S. 742 (2001).

### A. What Does it Mean for a Chapter 7 Trustee to Abandon Assets?

An asset of a bankruptcy estate is abandoned by operation of law pursuant to 11 U.S.C. §554(c), which provides as follows:

> *Unless the court orders otherwise, any property scheduled under §521(a)(1)*
> *Of this title not otherwise administered at the time of the closing of a case is*
> *abandoned to the debtor and administered for purposes of §350 of this title.*

Abandonment pursuant to §554(c), "which requires only the ministerial act of the Clerk's Office," is different from abandonment pursuant to §554(a) and (b), "which requires an unequivocal act" with notice and a hearing. *In re Balonze,*336 B.R. 160, 169 (Bankr. D. Conn. 2006). Abandonment pursuant to §554(c) is commonly referred to as "technical" abandonment, but the "more legally precise description of the abandonment that occurs under §554(c) is to simply state that abandonment under §554(c) occurs statutorily, by operation of law." *In re Reiman,* 431 B.R. 901, 908 (Bankr. E.D. Mich. 2010). Abandonment under §554(a) and (b) "is commonly referred to as specific or intentional abandonment." *In re DeGroot,* 484 B.R. 311, 318 (6th Cir. B.A.P. 2012).

Section 554 of the Bankruptcy Code outlines a Chapter 7 trustee's right to abandon assets in Chapter 7 Bankruptcy case. The Trustee files a notice of abandonment with the bankruptcy court pursuant to Fed. R. Bankr. P. 6007(a) and only after notice and hearing, and no one objects, the Court approves the abandonment, the asset is presumptively abandoned, if the asset has been listed or scheduled but not administered by the Trustee when the case is closed, the asset is deemed abandoned.

Generally, a Trustee chooses to abandon a property either because: a) it would be burdensome to administer the asset or b) it has inconsequential value to the estate. These are the same reasons contained in Trustee's *Notice of Abandonment* at doc #160.

Once property is abandoned, it is no longer property of the estate, nor under the control of the trustee; instead, the property reverts to ownership by the debtor. Debtor is free to then dispose of the assets however debtor sees fit. In this case our debtor chose to relinquish all interests in the 3 properties by his stated intention to surrender all interest in the collateral to the corresponding secured creditor.

> *The effect of abandonment by a trustee, whether accomplished by affirmative act under 11 U.S.C. § 554(a) or (b) or by failure of administration under subparagraph (c), is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate."* In re Sills,*126 B.R. 974, 976 (Bankr. S.D. Ohio 1991). "When property is abandoned, it ceases to be property of the estate and reverts to the debtor."* Sills*, 126 B.R. at 976 (citing* Brown v. O'Keefe*, 300 U.S. 598, 602 (1937)).*

In the instant case, Trustee at doc #160 abandoned: the real property located at Puerto Real, Cabo Rojo and the real property located at Llanos Tuna, Cabo Roy, Cabo Rojo; Trustee additionally abandoned the motor vehicle. The Abandonment was duly noticed and no opposition was filed by any party in this case. In 2 of the assets, the creditor filed their respective claims both showing equity in favor of the respective claimant. See claims #1 and #2. Furthermore, the real property and the vehicle were also noticed by debtor for surrender. Refer to Notice of Intention filed with the Voluntary Petition herein at doc #99.

Can the property be brought back into the Estate to compensate the 3 secured creditors by payment of 33% of its claim, as Trustee pretends? Debtor argues that it cannot, and even if the collateral revested in the Estate once again, there is no legal basis to administer the collateral of any of the 3 creditors, nor is there a basis in the law to allow use of surplus funds to be paid to the secured creditors, each with more than ample collateral to execute and collect from, especially in view of debtor's intended and declared intention to surrender.

The automatic stay under 11 U.S.C. §362(a) continues related to property of the estate until it is no longer property of the estate under 11 U.S.C. §362(c)(1). In this case the two creditors BPPR and Penn Fed both sought and obtained relief from the automatic stay, also without objection by any party in interest in this case. Refer to doc #102 and #145.

The third secured creditor in that of Department of Treasury, secured by the two real properties is also subject to the abandonment by Trustee, as well as to the surrender of the collateral by the debtor.  In the §362 relief obtained by BPPR, Treasury has a valid tax lien on the Puerto Real property and as such will presumably be partially satisfied from the Puerto Real property if Treasury chooses to actively participate in the eventual auction of the Puerto Real, Cabo Rojo property, followed by availability of the second Llanos Luna, Cabo Rojo property also at Treasury's disposal for collection and execution. Any remaining balance owed to Treasury should be additionally satisfied with the otherwise unincumbered Llanos Tuna property upon a tax sale of the property in favor of the Department of Treasury.

## DISCUSSION of ISSUE V

**Does this Court have jurisdiction over the abandoned property in this case where the automatic stay has been sought, unopposed and obtained by 2 of the 3 secured creditors, where the interest in the collateral was surrendered and relinquished by the debtor, discharge entered, in addition to the un-opposed abandonment of the collateral by the Trustee?**

Pursuant to 28 U.S.C. §1334 when a bankruptcy case is filed the court has exclusive jurisdiction of all property, wherever located, of the debtor, as of the commencement of such case.  Such jurisdiction however, has its limits. Property abandoned under 11 U.S.C. §554 ceases to be part of the estate and reverts to the debtor and stands as if no petition was ever filed over the real property and ceases to be part of the bankruptcy estate.  The bankruptcy court lacks jurisdiction over the property. *In re Rich,* 510 B.R. 366 (Bankr. D. Utah 2014); *In re Dewsnup,* 908 F.2d 588 (10th Cir. 1990); *In re Gardner,* 913 F. 2d 1515 (10th Cir. 1990).

Jurisdiction does not follow the property.  It lapses when property leaves the estate. *In Matter of Chicago, Rock Island & Pac. R. Co.,* 794 F. 2d 1182 (7th Cir. 1986), *In re Xonics Inc.,* 813 F. 2d 127 (7th Cir. 1987).  Where an estate has disclaimed any interest in the claim at issue so that resolving the claim will not affect the amount or allocation of the estate's property, there is no "related to" jurisdiction.

The practical effect of abandonment is to fold up the bankruptcy case, to remit claimants to the "abandoned" assets to whatever remedies they have at state law. *Xonics Inc.* at 132.  A federal court is open only if there is an independent source of jurisdiction.

*In re Matter of Chicago*, supra.  The capacity of a Chapter 7 Trustee to act depends on the jurisdiction which the bankruptcy has.  If the court has no jurisdiction the trustee has no jurisdiction over the properties or over the liens which encumber the same.

In our case, as in *Xonics*, Trustee "satisfied" all of its secured claims by abandoning the underlying property to the secured creditors to whatever remedies they have in state courts.  "When the disposition of the abandoned assets cannot possibly affect other creditors, there is no reason for the bankruptcy court's jurisdiction to linger."

Contrary holding is found in *In re Ramos*, 498 B.R. 401, 404 (Bankr App. 1st Cir. 2013) that holds that "[w]hile the abandonment removed the Property at issue from the bankruptcy estate, the abandonment may possibly have no effect upon the bankruptcy court's . . . jurisdiction of the debtor's property".  Under the circumstances of this case, it is doubtful that this Court still retains jurisdiction over the properties under these facts.  Also refer to *Meléndez vs Collazo (In Re Meléndez)*, CASE NO. 14-03043 (Bankr. D.P.R. Dec. 3, 2015).

Moreover, we cannot lose sight that each of the 3 secured creditors also bargained or chose to secure payment from collateral of the debtor which was abandoned by the Trustee at doc #160.  Why under the proposed distribution by Trustee, would it be acceptable to allow these creditors to lay claim by holding and retaining their respective collateral for payment and in addition also receive 33% of its claim in further compensation?  It is not appropriate; it is not proper and it is not based on any disposition of the Bankruptcy Code that we could find to support such actions by a Chapter 7 Trustee.

BPPR bargained for payment of the amounts loaned to debtor, or in defect, the Puerto Real, Cabo Rojo collateral to secure its claims.  According to the its own claim, BPPR is over secured and thus it will realize 100% of its claim in foreclosure of its mortgage which has already been initiated before the State Court in case **MZ 2021-cv-01386** before the Mayaguez Superior Court.

Treasury too, secured its tax lien by encumbering both the Puerto Real and Llano Tuna, Cabo Rojo properties.  It has a right to actively participate in the foreclosure sale to be conducted by BPPR in its eventual foreclosure auction of the Puerto Real property, whenever slated.  Additionally, Treasury can and should move to collect its taxes owed from the collateral available to it and secured by it, should it not realize its full tax claim at auction of the first property, it can certainly move to auction the Llano Tuna property.

No more and no less will be collected upon the exercise of Treasury's right to sell the properties at a public tax sale.

PenFed likewise, bargained for payment of the purchase price for the 2014 Nissan Altima motor vehicle, or in defect of payment, the right to repossess the collateral securing its claim. PenFed's claim also shows it to be over secured and will in all likelihood, receive full payment with the repossession of its collateral upon acting to sell at auction its collateral.

## CONCLUSION

Trustee is abusing his legal authority in his attempt to pay the 3 secured creditors 33% of each of their claims, notwithstanding Trustee's own act to abandon, the surrender by debtor and relief from the automatic stay of 2 of the 3 creditors, and after discharge of the claims with collateral held by each of the secured creditors.

The approximate **$65,105** that trustee proposes to distribute to the 3 secured creditors cannot be paid as proposed by the Trustee, but must rather revert back to debtor as prescribed under §726(a)(6), and cannot be consumed and taxed by the Trustee simply because these are left over funds available after the 100% distribution to all unsecured creditors of this Estate. Such payment by the Trustee, if allowed by this Court, would be in detriment of the debtor's right to payment in sixth rank under §726(a)(6) and impacts his fundamental right to a fresh start.

Furthermore, Trustee is judicially estopped from now proposing to pay the same 3 creditors where he abandoned the collateral that secured these creditor's claims, to now shift and act in contradiction to his prior act of abandonment by proposing to distribute approximately **$65,104** to the 3 secured creditors. Funds that not for his shift and contradictory acts to administer the secured claim holders, would naturally revert to the debtor under §726(a)(6).

Judicial estoppel generally prevents a party proceeding in one phase of the case on an argument and then relying on a contrary request to prevail in another phase. This Court should not allow such inconsistency and contradiction by the Trustee. It is precisely Trustee's inconsistent position of abandonment and later administration that unfairly imposes a detriment to the debtor and impairs his fundamental right to a fresh start.

Debtor prays to this Honorable Court to disallow approval of Trustee's *Proposed Distribution* at doc #185, at least as the distribution proposes any payment to the 3 secured creditors: BPPR, PenFed and Treasury.  A secured creditor can protect its own interest in the collateral subject to the security interest and none of these 3 secured creditors have need of assistance or reward by additional payment from the Trustee.  These creditors each has its collateral with the untethered right to collect, foreclose, repossess and execute outside of bankruptcy.

CERTIFICATE OF SERVICE limited to participants in the CmEcf electronic, including the Chapter 7 Trustee, Roberto Román, US Trustee, Attorney Damaris Quiñones representing creditor Kirziamarie Pérez Barber through the CM/EFC System the A.U.S.T. and to parties on the Matrix.  LBR 9013-1(c)(3) does not require objection language nor provision of time to respond.

In Mayaguez, Puerto Rico, today 26th of January 2022.

s/ *Alberto Lozada Colón*
Alberto Lozada Colón
USDC PR #123811

Bufete Lozada Colón
PO Box 430
Mayagüez, Puerto Rico 00681-0430
787-833-5323
lozada1954@hotmail.com
*For Debtor*

Label Matrix for local noticing
0104-2
Case 20-00633-EAG7
District of Puerto Rico
Ponce
Wed Jan 26 11:44:28 AST 2022

DEPARTAMENTO DE HACIENDA
PO BOX 9024140
OFICINA 424-B
SAN JUAN, PR 00902-4140

PR DEPARTMENT OF LABOR
PO BOX 195540
HATO REY, PR 00919-5540

US TRUSTEE
EDIFICIO OCHOA
500 TANCA STREET SUITE 301
SAN JUAN, PR 00901-1922

ASSOCIATES FINANCE
PO BOX 11917
SAN JUAN, PR 00922-1917

BANCO POPULAR DE PUERTO RICO
P.O. BOX 362708
San Juan, PR 00936-2708

CITIBANK CCSI
PO BOX 11917
SAN JUAN, PR 00922-1917

CITIBANK SOUTH DAKOTA
PO BOX 11917
SAN JUAN, PR 00922-1917

CITICARDS CREDIT SERVICES
PO BOX 11917
SAN JUAN, PR 00922-1917

CITICORP FINANCE
PO BOX 11917
SAN JUAN, PR 00922-1917

ASUME
PO BOX 71316
SAN JUAN, PR 00936-8416

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA, PA 19101-7346

UNITED STATES TRUSTEE
500 TANCA ST STE 301
SAN JUAN, PR 00901-1922

US Bankruptcy Court District of PR
Jose V Toledo Fed Bldg & US Courthouse
300 Recinto Sur Street, Room 109
San Juan, PR 00901-1964

ASUME
P.O. BOX 70376
San Juan, PR 00936-8376

CITI CARDS
PO BOX 11917
SAN JUAN, PR 00922-1917

CITIBANK MORTGAGE
PO BOX 11917
SAN JUAN, PR 00922-1917

CITIBANK USA
PO BOX 11917
SAN JUAN, PR 00922-1917

CITICARDS SEARS
PO BOX 11917
SAN JUAN, PR 00922-1917

CITIFINANCIAL
PO BOX 11917
SAN JUAN, PR 00922-1917

BANCO POPULAR PR
FORTUNO & RIVERA FONT LLC
PO BOX 13786
SAN JUAN, PR 00908-3786

PENTAGON FEDERAL CREDIT UNION
Tromberg, Morris & Poulin, PLLC
1515 South Federal Highway, Suite 100
BOCA RATON, FL 33432-7404

US TRUSTEE
US TRUSTEE
EDIFICIO OCHOA
500 TANCA STREET SUITE 301
SAN JUAN, PR 00901-1922

ASSOCIATES
PO BOX 11917
SAN JUAN, PR 00922-1917

ASUME-KRIZIAMARIE PEREZ BARBER
PO BOX 71316 SAN JUAN PR 00936-8416

CITIBANK
PO BOX 11917
SAN JUAN, PR 00922-1917

CITIBANK NA
PO BOX 11917
SAN JUAN, PR 00922-1917

CITICARDS
PO BOX 11917
SAN JUAN, PR 00922-1917

CITICORP DINERS
PO BOX 11917
SAN JUAN, PR 00922-1917

DEPARTMENT OF TREASURY
SECTION OF BANKRUPTCY  424-B
P.O. BOX 9024140
SAN JUAN P.R. 00902-4140

DEPARTMENT OF TREASURY/BANKRUPTCY SEC.
P.O. BOX 9024140
San Juan, PR 00902-4140

DORAL FINANCIAL CORPORATION
LOPEZ SANCHEZ PIRILLO & HYMOVITZ LLC
PO BOX 11917
SAN JUAN, PR 00922-1917

KRIZIA MARIE PEREZ BARBER
PUERTO REAL
CALLE AZUCENA 321
Cabo Rojo, PR 00623-4901

LCDA EVELYN JANET GARCIA
APARTADO 1299
Hormigueros, PR 00660-5299

PANAMERICAN/CITIBANK
PO BOX 11917
SAN JUAN, PR 00922-1917

(p)PENTAGON FEDERAL CREDIT UNION
ATTN BANKRUPTCY DEPARTMENT
P O BOX 1432
ALEXANDRIA VA 22313-1432

ALBERTO O LOZADA COLON
BUFETE LOZADA COLON
PO BOX 430
MAYAGUEZ, PR 00681-0430

ALEJANDRO OLIVERAS RIVERA
CHAPTER 13
PO BOX 9024062
SAN JUAN, PR 00902-4062

EFRAIN CARRERO VELEZ
PUERTO REAL 11A
CALLE 10
CABO ROJO, PR 00623

FEDERAL LITIGATION DEPT. OF JUSTICE
PO BOX 9020192
SAN JUAN, PR 00902-0192

Kriziamarie Perez
Azucena 321 Puerto Real
Cabo Rojo, PR 00623

MONSITA LECAROZ ARRIBAS
OFFICE OF THE US TRUSTEE (UST)
OCHOA BUILDING
500 TANCA STREET  SUITE 301
SAN JUAN, PR 00901

NOEMI LANDRAU RIVERA
PO BOX 270219
SAN JUAN, PR 00928-3019

ROBERTO ROMAN VALENTIN
US TRUSTEES OFFICE
PO BOX 9024003
SAN JUAN, PR 00902-4003

ROSA E RODRIGUEZ VELEZ
US ATTORNEYS
TORRE CHARDON STE 1201
350 CARLOS E. CHARDON AVE
SAN JUAN, PR 00918-2124

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

PENTAGON FEDERAL CREDIT UNION
PO BOX 1432
Alexandria, VA 22313-2032

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Banco Popular de Puerto Rico
PO Box 362708
San Juan, PR 00936-2708

End of Label Matrix
Mailable recipients    44
Bypassed recipients     1
Total                  45